The United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. Good morning and welcome. Judge Sung and I would like to thank Judge Gilman for serving with us yesterday and today. He has his own cases in the Sixth Circuit, but we are so grateful that you're willing to help us. Pleased to be here. And thank you to your chambers as well for taking on the additional work. This is our fifth and final day for Judge Sung and me here in Portland, and I did want to just thank again everyone in the Pioneer Courthouse for being so welcoming, so helpful. That's true of everybody, but I did want to especially call out Kathy Dodds, Natalie Batiste, Chase Brearden, and all the court security officers who have been absolutely wonderful. So thank you for making us feel at home, and we're looking forward to a future invitation back. So with that, let's talk about the cases that have been submitted. One is Castro Fierro v. Garland. Another is Lozano Chamu v. Garland. We had another case on for argument today, Western Watersheds Project v. McKay. We advanced that argument to October 19, so that was argued yesterday. So today we'll have three cases for argument, and if counsel for the Hummel v. Kijikazi case would please go ahead and you may proceed. But let me ask first whether, is it Ms. Aiton-Miller? It is, yes. Okay. How much time would you like for rebuttal? You have 10 minutes. I would like to reserve two minutes if possible. All right. That's fine. Please proceed. Thank you. Good morning, Your Honors, and may it please the Court. Catherine Aiton-Miller on behalf of Logan Hummel, the appellant in this case. This case involves a claim for supplemental security income based on the impact of several physical and mental impairments, and the broad issue is whether the ALJ erred in rejecting Mr. Hummel's disability claim. But more specifically, we contend that the ALJ erred in evaluating three categories of evidence, particularly in light of Mr. Hummel's severe medical impairment of fibromyalgia. Those categories of evidence include Mr. Hummel's subjective symptom testimony, the opinion of his nurse practitioner, Ms. Bledsoe, and the written lay testimony of his wife. Given the ALJ's finding that Mr. Hummel suffers from severe fibromyalgia, the overarching problem is the ALJ's failure to consider the testimonial and medical opinion evidence in light of that disease's unique characteristics. So this Court has explained that fibromyalgia is unusual because those suffering from it have normal muscle strength, sensory functions, reflexes, normal appearing joints, no objective swelling, and an overall absence of symptoms that a lay person may ordinarily associate with joint and muscle pain. And it's diagnosed based on a patient's self-reported symptoms, and outwardly normal physical examinations are to be expected. So, excuse me, do you think there is any objective medical evidence that can disprove that symptom testimony? And what do you think that is? You just said that you could do an outward physical exam to confirm subjective symptom testimony. So I assume that same objective medical evidence could disprove it. So what is that? So what I said is that outwardly normal physical examinations are to be expected. So in SSR 12-2P, the agency recognized that fibromyalgia signs and symptoms include muscle pain, fatigue, muscle weakness, headache, abdominal pain, numbness and tingling, depression, and seizures, among others. And I noted the ones that are documented in the record in the case before the Court. In addition, the agency recognized that the signs and symptoms of fibromyalgia vary in severity and may be absent on some days. And for this reason, SSR 12-2P requires ALJs to take a look at the full record and not to focus only on certain findings. So if there are normal findings documented in some examinations, the ALJ is not to selectively focus on those normal findings. In the present case, however, the ALJ repeatedly and selectively did cite essentially normal objective medical findings to dismiss the testimonial evidence and Ms. Bledsoe's medical opinion. But the ALJ failed to explain how those objective findings undermine the allegation of disabling fibromyalgia in this case. Turning to Mr. Hummel's subjective symptom testimony, the ALJ is required to consider limitations resulting from a claimant's symptoms provided by the claimant and other non-medical sources. And in this case, the ALJ first acknowledged Mr. Hummel's testimony only by noting his alleged disabling impairments, including fibromyalgia. And as I was reviewing the briefing in this case, I think this highlights the party's disagreement. So in her responsive brief, the Commissioner argued that the ALJ discussed Mr. Hummel's subjective complaints and then juxtaposed those complaints with numerous unremarkable examination findings. But the ALJ never actually identified the testimony that she took issue with, and she failed to explain how the normal medical findings she cited undermined that testimony. Well, she also was, the ALJ thought that his home activities were inconsistent with the severity of his fibromyalgia, right? What is your position on your client's coaching activities? She did. She identified coaching as being inconsistent with his alleged limitations. However, the record actually lacks any specific detail about that activity to demonstrate that it is inconsistent with his alleged symptoms. So he alleged memory issues, numbness in his hands, legs, and feet, widespread pain, headaches, inability to stand for long periods, and he alleged that he relied on family members for meal preparation and most household chores, and that he suffers from depression as well. And there's nothing in the record to demonstrate that the activity of coaching actually undermined those allegations. So there's no information about how frequently he coached the time commitment, the actual physical demands of that activity, to demonstrate that it contradicts his alleged limitations. So largely the ALJ identified what she found to be objective examination findings, but specific to his allegation of disabling fibromyalgia, she simply summarized his reported symptoms documented in the record. And she didn't identify the testimony that she took issue with, so there's a lack of specificity in her reasoning. She just selectively cited objective findings, and she didn't explain even how those specific findings undermined his testimony. So as an example, she cited intact cranial nerve function, symmetric shoulder shrug, stable gait, normal movement of the extremities, and intact reflexes. And reflexes in particular are identified as an examination finding that is expected to be normal in a fibromyalgia patient in the Revels case. So our position is that the ALJ erred in repeatedly citing this sort of paragraph of normal findings, but that this selective recitation of normal findings is not relevant to the fibromyalgia inquiry. So what relief are you asking for for us to do? We would request a remand to the agency, and I think it's most appropriate in this case to remand to the agency for an evaluation of the record and Mr. Hummel's allegations of disability specific to his disabling impairment of fibromyalgia. So the ALJ also erred in characterizing his treatment as very conservative. She provided no explanation for why she deemed it conservative for his various conditions, including fibromyalgia, and it's really not clear what more aggressive treatment would be necessary for that specific disease. So he was prescribed numerous pain medications. He underwent nerve blocks and steroid injections, and Revels also addresses this specific treatment in the context of fibromyalgia and states not only does the ALJ have to explain why it's considered conservative, this treatment is not necessarily conservative within the context of fibromyalgia. If I may, I'd like to reserve my remaining time. Yes, you have a minute and 54 seconds. Thank you. All right. Counsel for the defendant, please. Thank you, Your Honors. Your Honors, good morning. Good morning, Ms. Eitenmiller. Joseph Blankheimer on behalf of the commissioner. I want to address the claimant's argument this morning about essentially how objective medical evidence is not relevant in fibromyalgia cases. That just is not the case. SSR 12-2P talks about how the ALJ has to evaluate the longitudinal record. SSR 12-2P discusses certain findings that need to be present in the record to document fibromyalgia, as you pointed out, Judge Coe. And in this case in particular, the distinction between this case and Revels, which the claimant has relied heavily upon, is that in Revels, fibromyalgia really was the main impairment at issue. And in the introductory paragraphs of that case, this court noted that while there were some other impairments, really fibromyalgia was the key impairment there. And the court went through and certainly acknowledged that fibromyalgia is a unique condition. It doesn't always show up on objective exams, things like that. What's different about this case is that this claimant has alleged fibromyalgia as one of many impairments. When we look at even what Judge Bledsoe said, or excuse me, Nurse Bledsoe said in her opinion, she identified eight or nine different impairments, diagnoses, that contributed to this claimant's impairments. And the same is true when the claimant applied. He identified multiple impairments, fibromyalgia being just one of those. And in fact, Nurse Bledsoe even questioned whether or not the claimant had fibromyalgia when she first saw him. So what makes this case different is that we have a lot of impairments, which can certainly be tracked objectively. And we have fibromyalgia really comprising just one part of this multi-symptom case. So it was reasonable for the ALJ to listen to what the claimant said, which was essentially that this combination of impairments that he had, ranging from the seizures to gastrointestinal issues, to pelvic pain, to a bladder condition, to depression and anxiety. It was reasonable for the ALJ to take a look at the sweeping allegations that the claimant made in this case and compare that to the objective medical evidence. And when the ALJ did that, and I would point the court to pages 43 to 44 of the ALJ's decision, where she goes impairment by impairment. You know, the claimant alleged today that the ALJ just sort of made these generalized findings. But we have the ALJ summarizing the testimony that Hummel provided, and then going impairment by impairment and sort of juxtaposing these allegations with all of these normal findings. So this case is different than Rebels. I think certainly the claimant would have a different case had fibromyalgia been the only impairment at issue, very similar to how it was in Rebels. But here, because we have such an extensive list of diagnoses and allegations from the claimant, it was reasonable for the ALJ to look at that objective medical evidence, the course of treatment that the claimant was receiving, which in this case comprised of medication, physical therapy, a lot of marijuana usage that the claimant was discussing in terms of how he was handling these impairments. And to sort of take a look at the record on the whole and say, the subjective complaints that the claimant is making about not being able to do any postural movements whatsoever, if we look at his functional report, he checked every box in terms of how these limitations restricted his postural movements. Let me ask a question for you here. You know, the ALJ found there was no tenderness. And in your brief, you point out that tenderness is a key consideration in evaluating fibromyalgia. And yet, I see in February 2020, there was an examination observing tenderness in Hummel's left hip. And then in January, February, and March of 2021, indicated the same thing. So how do you explain her failure to see what was in the record about tenderness? Well, I don't think that the ALJ failed to see what was in the record about tenderness. The ALJ found that fibromyalgia was a medically determinable impairment. So one of the things that we look to under SSR 12-2P is tender points. And the ALJ acknowledged that she, you know, gave Mr. Hummel the benefit of the doubt, found he had fibromyalgia, even though Nurse Bledsoe was on the fence about it initially. So the ALJ didn't overlook the tender points. What the ALJ was pointing out when she was evaluating subjective complaints, as well as Bledsoe's opinion, was that there were, in fact, some exams where he did not have tenderness. So we have a mixed record here, but it's important to note that these exams where there was no tenderness, those exams do stand at odds with what the claimant is saying, which is that, you know, he's in this constant state of pain. I think there were certain testimony that he couldn't even sometimes put sheets over his body. He was so sensitive and so tender. So if we have exams in the record that are showing that he does not have tenderness, those exams stand at odds with this allegation that he's constantly struggling with tenderness, pain, you know, debility. There's no longitudinal record in a fibromyalgia case, do you not? Absolutely, yes. So, I mean, the fact that he might have good days doesn't mean he might not then have more bad days. You can't just cherry-pick the good days. Yes, that's correct, Your Honor. I certainly agree with that, but I don't think the ALJ was cherry-picking here. I mean, the ALJ went through the records in a very extensive analysis starting on page 43 and was acknowledging, you know, and certainly acknowledged that the claimant had limitations here. This is not a case where the ALJ said, this claimant does not have any limitations. This is, you know, there's no impairments here. The ALJ, in fact, found that the claimant had multiple severe impairments and included limitations in the residual functional capacity to account for that, including, you know, limiting this person to light work, limiting the posturals and the environment that the claimant was working in. But what the ALJ did was in addition to acknowledging these limitations, she did take a look at the longitudinal record and found that those records just did not align with the level of severity that the claimant was alleging. I mean, the claimant was alleging that he was essentially unable to take care of himself, that, you know, his pain levels were sort of unimaginable and, you know, they affected every aspect of his life. And when the ALJ looked at that longitudinal record, we see a lot of normal findings. We see the conditions largely being managed by marijuana usage and PT. Can you point me to where in 43 and 44 of the record, the ALJ? I see stuff about colonoscopies and, you know, objective medical evidence, but it doesn't seem relevant to the fibromyalgia. So where in, you know, in this record here, the two pages you've asked us to focus on, does it really address the fibromyalgia? I mean, it says, you know, concerning his fibromyalgia, these are Mr. Hummel's complaints, but then it just says, you know, electrodiagnostic studies of the upper and lower extremities were normal. And then it just goes on to, you know, pupils and visual fields and midline tongue, and I guess I'm just not seeing its relevance to the fibromyalgia. Right. So, yeah, the, yes, on 43, you're right, Your Honor, on 43 and 44, the ALJ does sort of address this fibromyalgia right here, but then if we go further down on the 44. Other than just acknowledging the complaint on 43, how is the fibromyalgia actually dealt with? On page 44, we do see the ALJ citing the, sort of in the middle there, you know, the exams where, as Judge Gilman pointed out, you know, no tenderness to palpation. There's a finding there that the ALJ makes, which, you know, as we mentioned, is a relevant consideration under SSR 12-2P. It speaks, it does speak to fibromyalgia by pointing out that there's no, that there were exams where there was no tenderness. It ignores the fact that there were other exams where there was tenderness. Correct. And I think this is, you know, I think we do have a mixed record here. I think there were times when there was no tenderness and there were times when they were, but, you know, the point. Counsel, so, but you, as you've already pointed out, the ALJ found that the claimant suffers from, has fibromyalgia. So at this point, there's, that's objective diagnosis that can reasonably be expected to cause the symptoms at issue. And then under our two-part test, at that point, we don't require objective medical evidence to establish the severity of the symptoms and subjective testimony alone can establish them. And the ALJ has to provide clear and convincing reasons for rejecting specific testimony. So when I read the analysis here, it is an extremely high level. And I don't, there's already, I mean, I have a hard time seeing anything here that clearly and convincingly specifically explains why the ALJ was rejecting the subjective symptom testimony, given that the diagnosis of fibromyalgia was credited. Yes, and I see my time is up, so if I can answer this question. Basically, I mean, yes, you're right, Your Honor. I mean, I would also characterize this as a pretty broad, you know, review of the medical records. But in this case, that was reasonable because the claimant made very broad allegations. Again, more than just fibromyalgia. I mean, fibromyalgia is an aspect of this case, but there were so many other impairments, too, that the claimant was citing as a basis for his subjective complaints. So while it's true that we do see the ALJ going through a lot of, a wider range of findings here, the point the ALJ was making that when you have an individual who's saying that I've got multiple impairments that affect nearly every aspect of my functioning, it was, the ALJ pretty much had to go through this medical record and point to all of these and look at all of these medical findings to see whether or not the objective medical evidence was supporting that broad array of allegations that the claimant was making. So in this case, the ALJ's analysis was reasonable. Can I ask one last question? If we were to find that the ALJ erred by discounting Mr. Reeve's subjective symptom testimony, would you concede that we would then have to find the ALJ erred in discounting Mr. Reeve's wife and Nurse Bledsoe's testimony because it was consistent with Mr. Reeve's testimony? I would not concede that, Your Honor, just because the ALJ did give reasons. The ALJ did not base the analysis of Nurse Bledsoe or the analysis of the third-party statement on her analysis of the subjective complaints. If we look at page 45 on to 46, the ALJ is analyzing that evidence separately. So they are separate analyses. I don't think we would be able to necessarily hinge those other two issues on the ALJ's analysis of the subjective complaints. All right. Thank you. You've gone over your time. Three minutes and 13 seconds. So let's have a two-minute rebuttal for Ms. Eitenmiller, please. Thank you. I just wanted to respond to the statement that fibromyalgia is one of many impairments and note that that's actually consistent with the nature of this disease. So positive tender points are a critical piece of relevant evidence when a claimant is establishing that they suffer from fibromyalgia in the first set of requirements set out by SSR 12-2P. However, there is a second set of requirements that the claimant can use in lieu of positive tender points. And that is repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions. And it's important to note that those co-occurring conditions can include depression, anxiety disorder, irritable bowel syndrome, irritable bladder syndrome, chronic fatigue syndrome, which is documented in this case, and then also the symptoms that I noted earlier, which are muscle pain, fatigue, muscle weakness, headache. These are things that, as this court has noted in its similar cases, have to be diagnosed based on a claimant's self-reports. You know, we don't have objective evidence for headaches. We don't have objective evidence for abdominal pain, necessarily. So I'd also like to note that related to the reasoning that the ALJ provided in regard to Ms. Bledsoe's opinion and the lay testimony, she identified the exact same objective findings to dismiss that evidence. So I would posit that it does require the court to find, if the court finds that the ALJ erred in rejecting the testimonial evidence, it does require that finding on the remaining categories of evidence as well. So for these reasons, we ask the court to reverse and remand. Thank you. Thank you very much to both counsel for your very helpful arguments.
judges: Gilman, KOH, SUNG